UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR GUZMAN, Florida resident,

    Plaintiff,

v.

Case No: 2:15-cv-192-FtM-29CM

MIKE SCOTT, Lee County Sheriff, in his individual and official capacity, GUSTAVO VALLEJO, in his individual capacity, Florida resident, MIKE TAMULIONIS, in his individual capacity, and RICHARD RUSSO, in his individual capacity,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on defendants Mike Scott, Mike Tamulionis, and Gustavo Vallejo's Motion for Final Summary Judgment (Doc. #21) and supporting documentation (Doc. #22) filed on November 3 and 4, 2016. Plaintiff filed a Response (Doc. #27) on November 17, 2016. For the reasons set forth below, the motion is denied, but Count III has been withdrawn and is therefore dismissed.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

On April 12, 2011, between 8:30 and 9:00 p.m., Officers Tamulionis, Vallejo, and Russo[1] were on duty assisting with the Fugitives Warrant Unit of the Lee County Sheriff's Office. The officers were in an unmarked police vehicle searching for an individual wanted in connection with a rape and kidnapping. The victim of the crime was with the officers in order to facilitate the identification and apprehension of the suspect. The victim's husband, Oscar Sebastian, was the target of the search.

To assist in their search, the officers utilized technology that, based off of cell phone towers, provided a "cone" of locations where Oscar Sebastian's cell phone may be found. The cone led the officers to an area near North Riverside Drive and West Terry Street in Bonita Springs, Florida. As they approached the area where the cell phone was potentially located, the officers saw two or three Hispanic males standing outside of a residence on North Riverside Drive. One of these individuals was plaintiff, Victor Guzman.

Because the victim only spoke Spanish, Officer Vallejo, who speaks both English and Spanish, acted as a translator between the other officers and the victim. As the officers approached the men

---

[1] Plaintiff's Amended Complaint (Doc. #5) names Richard Russo as a defendant, but it does not appear that Mr. Russo was ever served with process or made an appearance in this matter.

in the unmarked police vehicle, the victim became hysterical, pointed at one of the Hispanic men, and stated "That's him. That's him." Once the victim had calmed and was able to speak, Officer Vallejo asked the victim to describe the suspect so that the officers could identify which one of the men she was referring to. Officers Tamulionis and Russo exited the vehicle while Officer Vallejo and the victim remained in the vehicle. The officers took plaintiff to the ground, where he was ultimately handcuffed. The factual versions of this takedown greatly diverge.

Plaintiff alleges that he was facing away from the officers' vehicle, showing his friend Francisco some material that was covered at Church earlier in the evening and giving him his assignment. Plaintiff did not see the officers or their unmarked vehicle approach. Francisco, who was facing towards the direction of the officers, did not communicate the officers' presence to plaintiff. Plaintiff asserts that, without announcing their presence, the officers hit plaintiff from behind and knocked him to the ground. Once on the ground, the officers beat plaintiff, causing him to lose consciousness. Plaintiff states that he did not resist, flee, or otherwise attempt to evade the officers in any way.

According to the officers, Officers Russo and Tamulionis exited the vehicle and instructed plaintiff to get on the ground. Plaintiff attempted to flee, getting approximately two feet away

from officer Russo, when officers Russo and Tamulionis tackled plaintiff to the ground. The officers assert that they did not punch plaintiff and only used as much force as was necessary under the circumstances. Guzman was handcuffed while on the ground. All parties agree that the entire incident occurred within a very short period of time.

It is undisputed that the officers stood Guzman up and faced him toward the victim. The victim indicated that Guzman was not the person they were seeking.

Plaintiff states that he then informed the officers that he was badly hurt and in need of medical attention. In response, the officers said that he was fine and should just take some aspirin. The officers assert, on the other hand, that they asked plaintiff if he needed medical attention and plaintiff declined, stating that he was fine. The officers then left the area, leaving plaintiff. Plaintiff asserts that as a result of the incident he had bruising and knots on his body and head, has vision loss, and suffers from frequent headaches.

Juan Garcia, a friend of plaintiff's who lives near the scene of the incident, arrived after the police left the area. Upon seeing plaintiff, Garcia called an ambulance, insisting that plaintiff go to the hospital. The ambulance arrived and plaintiff was transported to North Collier Hospital where he obtained treatment. Plaintiff complained that he was experiencing pain

throughout his entire body. Plaintiff obtained discharge documents relating to head injuries, corneal abrasions, and orbital floor fractures. The hospital physician wrote plaintiff a prescription for amoxicillin.

Plaintiff followed up with Dr. Saurabh N. Patel, M.D., an ophthalmologist who had performed retinal detachment repair surgery on plaintiff in 2009 following a 2007 work-related injury.[2] On April 13, 2011, the day after the incident with the officers, plaintiff returned to see Dr. Patel complaining of left eye pain and vision loss. Plaintiff reported that he had been hit on the left side of his eye during the incident the night before. Dr. Patel examined plaintiff and found that plaintiff could count fingers at three feet and that a cataract was developing in his left eye. Dr. Patel did not notice any physical indication of a recent injury, such as a laceration or ecchymosis (back and blue around the eye).

Because of plaintiff's indication that he had experienced blunt trauma to his head the evening before, Dr. Patel requested a copy of the CAT scan report that was performed at the hospital. The second page of the facial CAT scan report concluded "no major

---

[2] After plaintiff's retinal detachment surgery, plaintiff continued to see Dr. Patel for follow-up appointments through the remainder of 2009 and into 2010. Prior to being seen on April 13, 2011, the last time plaintiff had contacted Dr. Patel was on November 16, 2010 when plaintiff called Dr. Patel's office with concerns that his vision was not improving.

acute fractures, old left medial orbital wall deformity," with which Dr. Patel concurred.  Dr. Patel also received a copy of the CAT scan of the brain without contrast which did not indicate the existence of a recent traumatic injury.  Dr. Patel testified during his deposition that cataracts often develop in conjunction with retinal detachment surgery and plaintiff's cataract that was causing him vision loss was not the result of a recent trauma and, instead, had been slowly developing over time following the retinal detachment surgery.

### III.

Plaintiff's Amended Complaint (Doc. #5), the operative pleading before the Court, asserts the following claims:  (1) a 42 U.S.C. § 1983 claim against Mike Tamulionis, Richard Russo, and Gustavo Vallejo for the use of Excessive Force; (2) a 42 U.S.C. § 1983 claim against Mike Tamulionis, Richard Russo, and Gustavo Vallejo for Failure to Intervene; (3) a 42 U.S.C. § 1983 claim against the Lee County Sheriff, Mike Scott for having a policy of excessive force; and (4) a state law claim against Lee County Sheriff, Mike Scott, for Battery based on the conduct of his three officers.  (Doc. # 5.)

**A. Count I: 42 U.S.C. § 1983 Excessive Force Claim**

Count I asserts a claim under 42 U.S.C. § 1983 for excessive force against Mike Tamulionis, Richard Russo, and Gustavo Velejo. (Doc. #5, ¶¶ 18-26.)  Defendants move for summary judgment as to

Count I on the basis that "there are no disputed material facts that Mr. Guzman did not sustain serious injuries as a result of his arrest" (Doc. #21, p. 8), and therefore "[i]n the absence of any serious injuries to Mr. Guzman resulting from *this* arrest, there can only be, at best, a de minimis injury that does not rise to a constitutional violation." (Id. at 9) (emphasis in original) (citation omitted). Plaintiff responds that "gratuitous force or unreasonable force, even without injury, is actionable." (Doc. #27, p. 4.)

The relevant excessive force principles in the Fourth Amendment context are well-established:

(1) The Fourth Amendment allows officers to use a "reasonable" amount of force in detaining or arresting an individual. Graham v. Connor, 490 U.S. 386, 396 (1989).

(2) The determination of whether a particular use of force is "reasonable" requires careful attention to the facts and circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Priester v. City of Rivera Beach, 208 F.3d 919, 924 (11th Cir. 2000) (quoting Graham, 490 U.S. at 396).

(3) The right to arrest or detain necessarily carries with it the right to use some degree of physical coercion or threat to

effect the detention or arrest. Graham, 490 U.S. at 396; Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) ("[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."). This amount of force is often referred to as *de minimis*.

(4) The use of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment. Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013); Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[W]e conclude this Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."). *De minimis* force, even when it is "unnecessary," is "not unlawful." Durruthy, 351 F.3d at 1094.

(5) Even *de minimis* force, however, will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect. Yessin v. City of Tampa, 613 F. App'x 906, 908 (11th Cir. 2015); Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008).

(6) The principle which allows *de minimis* force does not immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat. Saunders v. Duke, 766 F.3d 1262, 1265, 1269-70 (11th Cir. 2014) (denying qualified immunity where officers allegedly slammed an

already-handcuffed arrestee's head against the pavement with extreme force); Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (concluding that an officer used excessive force when he punched an individual in the stomach while the individual was handcuffed and not struggling or resisting); Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (finding excessive force where officers allegedly slammed plaintiff's head against the trunk after being handcuffed); Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (holding that a plaintiff could seek nominal damages based on pain and suffering where officers kicked and beat the handcuffed plaintiff).

(7) A suspect who is gratuitously beaten in violation of the Fourth Amendment does not lose his ability to pursue an excessive force claim even if there is no visible, or serious, or compensable injury. Saunders, 766 F.3d at 1269-70 ("To conclude . . . that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry, which is the nature of the force." (alterations in original) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38-39 (2010) and relying on Eighth Amendment analysis therein)); Slicker, 215 F.3d at 1231-32 (holding that a plaintiff could seek nominal damages based on pain and suffering); Lee, 284 F.3d at 1200 ("Just as ordinary, reasonable force 'does not become excessive force when the force aggravates (however severely) a

pre-existing condition the extent of which was unknown to the officer at the time,' objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." (quoting Rodriguez v. Farrell, 280 F.3d 1340, 1352-53 (11th Cir. 2002)).

Depending on whose version of the detention event is credited, a reasonable jury could find excessive force. Assuming that there is no credible evidence of more than a *de minimis* injury, plaintiff would still have a viable excessive force claim. Since the material facts are disputed and the legal principles would not support denial of the claim when those facts are viewed in the light most favorable to the plaintiff, defendants' motion is denied. Accordingly, defendants' Motion for Summary Judgment as to Count I is denied.

**B. Count II:  42 U.S.C. § 1983 Failure to Intervene Claim**

Count II asserts a claim under 42 U.S.C. § 1983 for failure to intervene against Mike Tamulionis, Richard Russo, and Gustavo Vallejo.  (Doc. #5, ¶¶ 27-36.)  Defendants assert they are entitled to summary judgment as to this claim because it is premised on the excessive force claim, to which defendants are entitled to summary judgment.  (Doc. #21, pp. 9-10.)  Since defendants are not entitled to summary judgment on the excessive

force claim, their argument as to Count II must fail. Accordingly, defendants' Motion for Summary Judgment as to Count II is denied.

### C. Count III:  42 U.S.C. § 1983 Claim Against Lee County Sheriff Mike Scott

Count III asserts a claim of supervisory liability under 42 U.S.C. § 1983 against Lee County Sheriff Mike Scott. (Doc. #5, ¶¶ 37-46.)  Plaintiff has withdrawn Count III in his Response to defendants' Motion for Summary Judgment.  (Doc. #27, p. 7.) Accordingly, Count III is dismissed and this aspect of the motion is denied as moot.

### D. Count IV:  State Law Claim for Battery

Count IV asserts a state law claim for battery against Sheriff Mike Scott based upon vicarious liability for the conduct of his deputies.  (Doc. #5, ¶¶ 47-52.)  Defendants assert that they are entitled to summary judgment as to Count IV because plaintiff did not sustain injuries and therefore he cannot establish that the amount of force used was excessive.  (Doc. #21, p. 13.)

"Pursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" Davis v. Williams, 451 F.3d 759, 768 (11th Cir. 2006) (quoting City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)).  Therefore, "[i]f an officer uses excessive force, the 'ordinarily protected use of

force . . . is transformed into a battery.'" Id. (omission in original) (quoting Sanders, 672 So. 2d at 47).

Because the Court rejects the defendants' argument that *de minimis* injury automatically means that the use of force was *de minimis*, the Court also denies defendants' Motion for Summary Judgment as to Count IV.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion for Final Summary Judgment (Doc. #21) is **DENIED.** Count III is withdrawn by plaintiff and is therefore **DISMISSED.**

**DONE and ORDERED** at Fort Myers, Florida, this __23rd__ day of January, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record